Katherine Adams v. Commissioner. Edward H. Adams v. Commissioner.
Adams v. Commissioner
Docket Nos. 12805 and 12806.
United States Tax Court
1949 Tax Ct. Memo LEXIS 189; 8 T.C.M. (CCH) 483; T.C.M. (RIA) 49116; May 12, 1949
*189 Partnership. - Family partnership consisting of husband and wife and their adult daughter recognized for tax purposes. Eli Freed, Esq., 1069 Mills Bldg., San Francisco, Calif., for the petitioners. W. J. McFarland, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: These consolidated proceedings involve deficiencies in income and victory tax for the calendar year 1943 determined by respondent against Katherine Adams and Edward H. Adams in the amounts of $1,127.98 and $41,237.40, respectively. The year 1942 is also involved in each proceeding because of the forgiveness feature of section 6 of the Current Tax Payment Act of 1943. The issues involved are whether respondent erred (1) in denying recognition for Federal tax purposes of the validity of a partnership among *190 Edward H. Adams, his wife Katherine, and their daughter Dorothy, doing business as Adams Brothers, and thereby taxing to Edward H. Adams the entire 1942 and 1943 net income of the business, except for a portion thereof allocated by respondent as the wife's community share, and (2), in the alternative, in the method used for allocating the income of Adams Brothers as between the community investment and Edward's separate investment in the business and, further, in undervaluing Dorothy's services to the business. Findings of Fact The petitioners are husband and wife and are residents of Oakland, California. For each of the years in controversy there was filed with the collector of internal revenue for the first district of California a separate income tax return made by each petitioner and their daughter Dorothy Jean Celli, respectively, and also a partnership return made under the name of Adams Brothers reporting its income as distributable one-third to each of those three-persons as equal partners. At all times material here and since prior to their marriage in 1915, Edward and Katherine Adams have been continuously domiciled in and residents of California, a community property *191 state. Prior to her marriage Katherine was employed as a bookkeeper, which employment she continued for about a year thereafter, and at the time of her marriage she possessed savings of at least $500. Katherine was a graduate of high school and Heald's Business College. At the time of Edward's marriage he and his brother, George, as partners operating under the firm name of Adams Brothers, were engaged in the business of producing, bottling, and distributing soft drink beverages and distributing bottled mineral water in Oakland, California, and at that time the net worth of their business amounted to approximately $3,000. The business of Edward and George Adams had been handed down to them by their father in 1912, at which time it consisted only of the distribution of bottled mineral water by making sales from a wagon. By 1915 the business of Adams Brothers had been expanded to also include the bottling and distribution of soft drinks, including Napa Soda. About a year after her marriage Katherine went to work in the office of Adams Brothers helping with the books and doing general office work, and at about the same time she furnished $500 of her own funds towards the purchase of *192 a truck needed in the business. Such amount has never been repaid her. In 1916, under an oral agreement with a representative of a St. Louis, Missouri, concern, and without cost, Edward and George Adams obtained the right to produce, bottle, and distribute in the Oakland area a soft drink beverage named "Howdy," and subsequently under a similar arrangement with the same concern they obtained the right to produce, bottle, and distribute a soft drink named "7-Up." Through the years Adams Brothers' business of producing, bottling, and distributing soft drink beverages gradually grew in size. On July 29, 1927 the net worth of Edward H. and Katherine Adams was about $9,000. In 1929, out of an inheritance from her mother received in that year, Katherine furnished $2,300 which was very much needed in the business of Adams Brothers at the time, and that sum has never been repaid her. In 1932, Katherine borrowed from her aunt the sum of $1,500, which was used for payments on trucks and equipment used for payments on trucks and equipment used in the business of Adams Brothers, and such sum was repaid out of Adams Brothers subsequent earnings. In 1932, Katherine ceased her regular work in the *193 office of Adams Brothers, which had been continuous since 1916, and thereafter devoted her time primarily to the duties of a housewife. Immediately after the repeal of prohibition in the 1930's Edward and George Adams, under an oral agreement with the Acme Brewing Co. of San Francisco, and without cost to them, obtained a sole distributorship for Acme beer in the territory embracing Oakland and parts of Alameda and Contra Costa Counties, California. Under that arrangement and from that time up to and including the taxable years, Adams Brothers purchased and paid for Acme beer which was delivered to its place of business in Oakland and resold by it to its customers at a price fixed by Acme. During that same period Adams Brothers continued producing, bottling, and distributing "7-Up" in the Oakland area. In 1937 Edward purchased George's one-half interest in the partnership business of Adams Brothers for $15,000, which sum was borrowed from Acme Brewing Co. by Edward and his wife Katherine jointly signing a note in that amount, which was subsequently repaid out of the earnings of Adams Brothers. Ever since their marriage in 1915 Edward and Katherine have had an understanding that *194 they jointly owned all property acquired by them after marriage and they maintained a joint bank account. By 1942 Adams Brothers owned eight trucks used in the distribution of Acme beer; seven trucks used in the distribution of "7-Up"; and bottling machinery, including a washer, filler, and carbonater, and all other equipment necessary for producing soda water beverages. In addition to truck drivers it employed three men in the bottling plant and a foreman to oversee the beer operations by checking on beer deliveries from the brewery, checking up on orders from customers, and checking truck drivers in and out. It also had the services of five beer salesmen furnished by Acme Brewing Co., which paid their salaries, and their work was to drum up trade. Edward generally managed the entire business but was on the outside most of the time building up trade, servicing old accounts, getting new accounts, and making collections. Dorothy had full responsibility of running the office affairs of the business. The petitioners' only child, Dorothy Jean Adams, was born in 1918. When she entered public high school, they directed her education along the line of a commercial course with the definite *195 idea that she would become active in the business of Adams Brothers. Upon Dorothy's graduation from high school in June 1937, petitioners sent her to Merritt Business School where, in June 1938, she completed a more advanced commercial course, including bookkeeping, machine calculation, typing, etc. Starting in February 1938 Dorothy attended school in the mornings and spent the afternoons in the office of Adams Brothers doing routine office work, typing letters and route sheets, answering telephones, taking orders, and generally familiarizing herself with the manner in which the business was operated, and for such services she did not receive any compensation. In August 1938 Dorothy became a full-time paid employee of Adams Brothers in the capacity of bookkeeper, and with her parents' consent immediately installed an accounting machine for billing customers to eliminate the old longhand method, but she made no change in the established system of accounting then in use. Soon thereafter Dorothy took over complete charge of running the office, which theretofore had been done by a male employee, and up to and including the taxable years her services consisted of full responsibility for *196 the office affairs; keeping all accounts and records; looking after complaints; checking on deliveries; ordering beer, 7-Up extract, supplies, etc.; paying bills by check without limitation as to amount, many of such bills exceeding the amount of $20,000; paying employees' wages; receiving payments from customers; checking credit ratings and extending credit to new customers; deciding on the hiring and firing of her office assistant; and when petitioners were away on vacation trips during June, July, and part of August of each year she took entire charge of the business. Dorothy worked from 8 a.m. until as late as 8 p.m., and after November 1942 when the foreman went into the Army she assisted Edward Adams in handling the foreman's duties. In 1942 Dorothy married and became Dorothy Jean Celli, but continued her full duties with Adams Brothers and lived with petitioners because her husband was in the armed service. During the years material here and from August 1938 on Adams Brothers maintained a commercial bank account on which both of the petitioners and Dorothy had equal authority to draw checks and each of them exercised that authority, but Dorothy drew and signed most of the *197 checks. From 1938 to 1942 Adams Brothers employed the services of one accountant to audit and close the books and prepare tax returns and in 1942 upon Dorothy's recommendation a different accountant was employed for that purpose. On March 25, 1941, Edward H. Adams, his wife Katherine, and their daughter Dorothy executed a written "Copartnership Agreement," drafted by their attorney, whereby those three parties agreed to become equal copartners in the business of selling, both retail and wholesale, beer, wine, malt, and soft drink beverages, under the firm name of Adams Brothers located at 541 East 12th Street, Oakland, California, commencing on April 1, 1941, and continuing until terminated by mutual consent or otherwise. The agreement also provided that the copartners should share equally in the profits and losses and should discharge equally among them all rents and other expenses required for the support and management of the business. The agreement further provided, inter alia, that Edward H. Adams assigned and transferred to such copartnership, as part of its capital, all of his right, title, and interest in and to all the assets of the similar business theretofore conducted *198 by him under the same name; that the agreement should be binding upon the parties, their heirs, and assigns; and that the agreement might be amended or altered by written agreement of all parties. Prior to the execution of the copartnership agreement on March 25, 1941, the terms and purposes thereof were discussed, understood, and agreed to by each of the petitioners and Dorothy who was then of age. Petitioners wanted Dorothy to become part owner of and later to carry on the business, and it was understood that she would continue to render services in helping to run the business. Also, petitioners wanted Dorothy to own separate property prior to her marriage. As between petitioners it had been their understanding that all property interests acquired subsequent to their marriage were owned jointly, half and half, as community property and that their community interest in the business theretofore conducted by Edward under the name of Adams Brothers was being transferred to the partnership. Shortly after the copartnership agreement of March 25, 1941 was executed, a notification of such partnership was mailed to all companies and persons with whom Adams Brothers transacted business; *199 to the State Department of Employment of California; the Social Security Board; and to the Treasury Department of the United States. Insurance theretofore carried in the business was changed to the name of the partnership. On and after April 1, 1941, there was no further withholding from Dorothy on account of Federal old age pensions or California unemployment insurance. The California State Board of Equalization issued to "EDWARD H., KATHERINE & DOROTHY J. ADAMS DBA ADAMS BROTHERS, 541 E. 12TH ST., OAKLAND" a "Sellers Permit" dated April 1, 1941, a "Beer and Wine Wholesaler's License" dated April 10, 1941, and a "Retail Package Off-Sale Beer and Wine License." In April 1941 the collector of internal revenue for the first district of California issued to "ADAMS E H-DOROTHY JEAN-KATHERINE ADAMS BROS 541 - E 12TH ST OAKLAND CALIF" two Federal special tax stamps, one for retail and the other wholesale dealer in fermented malt liquor other than distilled spirits. On August 1, 1941, pursuant to application dated April 7, 1941, the Treasury Department of the United States under the Federal Alcohol Administration Act issued a Wholesaler's Basic Permit No. 14-P-159 to "E. H. Adams, Dorothy *200 Jean And Katherine Adams, dba ADAMS BROTHERS, 541 East 12th Street, Oakland, California" to engage in the business of purchasing malt beverages for resale at wholesale. After April 1, 1941, and during the years material here, Dorothy continued to perform the office duties theretofore performed by her, but with the added responsibility of being in full charge of the office in the view that she was a partner in Adams Brothers instead of being merely an employee. Further, Dorothy signed the firm name over her own signature to all the numerous reports and returns required to be made by the partnership to various state and federal agencies, which reports and returns had been theretofore signed by Edward H. Adams as owner of the business. On or as of April 1, 1941, Dorothy as bookkeeper set up on Adams Brothers' books a withdrawal account in the name of each of the three partners, and as shown by the firm's books the petitioners and Dorothy, respectively, made the withdrawals in the following amounts during the years indicated: Year
Edward H.
Katherine
Dorothy
1941
$ 35,343.41
$ 1,315.25
$ 950.00
1942
75,643.60
13,724.72
12,938.89
1943
123,113.02
109,555.07
108,973.09
1944
23,502.48
21,531.02
24,508.24
1945
39,436.97
39,600.00
39,580.00
1946
27,255.81
28,464.19
28,590.89
*201 No separate capital accounts for each of the three partners, under the copartnership agreement of March 25, 1941, were set up on the books of Adams Brothers as of April 1, 1941, but, instead, a single capital account was maintained and disclosed the following amounts on the dates indicated: Date
Amount
April. 1, 1941
$ 77,564.41
Dec. 31, 1941
132,796.69
Dec. 31, 1942
166,563.22
Dec. 31, 1943
71,155.70 As of December 31, 1943, and carried forward to January 1, 1944, the capital account was changed to "Investment Account" which disclosed the following amounts for each of the three partners on the dates indicated: Dec. 31, 1943
(Jan. 1, 1944)
Dec. 31, 1944
Dec. 31, 1945
Edward H. Adams
$26,484.74
$45,369.50
$66,818.56
Katherine Adams
26,484.74
47,340.96
66,655.53
Dorothy Jean Celli
18,186.22
36,965.22
66,675.53
The petitioners exercised no control over Dorothy's withdrawals and she maintained a separate savings account in her own name. On May 3, 1943, the petitioners and Dorothy, respectively, as the partners in Adams Brothers executed a written contract of sale of the partnership's 7-Up beverage business, including *202 its bottling and distribution rights, good will, machinery, equipment, trucks, etc., for $125,000. Prior to consummating that sale the petitioners and Dorothy discussed the matter and at first Katherine would not consent to it, but eventually agreed because that department of the partnership business was causing some grief in regard to needed replacements of machinery and trucks. In connection with the sale of the 7-Up bottling business a journal entry was made in the books of Adams Brothers, debiting the withdrawal account of each petitioner and Dorothy with $41,666.67, respectively, and crediting $105,237 to capital gains and losses and $19,763 to miscellaneous sales. On September 15, 1943, and due to the fact that the Bureau of Internal Revenue had questioned the validity of the copartnership agreement dated March 25, 1941, the petitioners and Dorothy executed a written "Supplemental Partnership Agreement" for the purpose of reaffirming their existing copartnership and with more particularity setting forth their mutual intention, under the March 25, 1941 agreement, to become equal partners with each entitled to one-third of all the distributable net income of Adams Brothers and, *203 further, setting forth in writing, inter alia, the prior mutual understanding of petitioners that the capital contribution to the partnership at its inception on April 1, 1941, consisted of each petitioner's one-half share of community property vested equally in both parties and, also, the mutual understanding of all three parties that Dorothy was thooughly familiar with the affairs of the business and would continue to render services and thus show a proprietary interest in the business. Opinion For the years involved respondent determined that the partnership among Edward H. Adams, his wife Katherine, and their daughter Dorothy was not recognizable for Federal income tax purposes and further determined, inter alia, that the entire net income of Adams Brothers was taxable to Edward, except as to a portion thereof computed by respondent as representing Katherine's community share based on the community investment in the business. Respondent's argument in support of his determination is that Katherine made no capital contribution and at no time rendered any vital services to the business; that Dorothy at no time rendered any vital services to the business, but performed only routine *204 work; and that after the effective date of the agreement of March 25, 1941, Edward continued to conduct the business of Adams Brothers in the same manner as he had theretofore done. The principal issue herein, namely, the existence of a valid family partnership recognizable for tax purposes, is one of fact, for as said by the Supreme Court in : "* * * A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses. When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' ; Cox v. Hickman, 8 H.L. Cas. 268. *205 We see no reason why this general rule should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes. * * *" With regard to the daughter Dorothy, who was of age and had completed a business training course and also had gained substantial practical experience in the business operated under the name of Adams Brothers, the facts herein are clear that she had capable business abilities; that, under the copartnership agreement of March 25, 1941, it was the intention of all the parties thereto that she would join with petitioners her labor and skill for the purpose of carrying on the business with a community of interest in the profits and losses thereof; and, further, that prior to, during, and subsequent to the years in question she did render very substantial and vital services to the business in the capacity of having full charge of the office affairs and in performing all the numerous services mentioned in our findings. It is our opinion that, for tax purposes, Dorothy was a recognizable partner with a one-third interest in the business of Adams Brothers, and we so hold. Cf. . With regard *206 to Katherine's being a recognizable partner in Adams Brothers, we have here the familiar case of a family enterprise of small beginnings being built up through the years into a prosperous business. In 1915 when Katherine married Edward, the latter in partnership with his brother George operated a small bottling and distributing business having a net worth of only $3,000. Over the period of years from 1916 to 1932 Katherine's services in the office and her financial aid at various times assisted the brothers in building up their business. In 1937 Katherine and her husband Edward pointly borrowed $15,000 which was paid to George Adams for the purchase of his one-half interest in the business of Adams Brothers, and in doing so Katherine and Edward were equally using their joint credit and risking their joint property interests with the intention and mutual understanding that they were jointly acquiring George's one-half interest in the business; and that interest so purchased became the community property of Edward and Katherine. The $15,000 loan was repaid out of subsequent earnings of the business which was managed and controlled by Edward from 1937 until April 1, 1941. When the partnership *207 agreement of March 25, 1941 was entered into, and without regard to any moneys furnished by her individually to Adams Brothers in 1932 and prior thereto, Katherine had a "present, existing and equal" interest in all of the community property acquired by her husband and herself after July 29, 1927 (see section 161a, Civil Code of California) and her interest in such property was a "present vested interest." ; ; and , aff'd. ; which embraced a substantial portion of the then greatly increased value of the business of Adams Brothers in excess of its value on July 29, 1927, at which time Edward's half interest in the business could not have exceeded $9,000 because that was the amount of the total net worth of both Katherine and Edward on that date. The facts herein are clear that under the copartnership agreement of March 25, 1941 it was the intention of all the parties thereto that Katherine was contributing her vested property interests in joining with Edward and Dorothy in an enterprise for the purpose of carrying *208 on business with an equal community of interest in all three of them in the profits and losses thereof. It is our opinion that, for tax purposes, Katherine was a recognizable partner with a one-third interest in the business of Adams Brothers, and we so hold. Cf. , and (Feb. 16, 1949). We hold that Edward and Katherine Adams and Dorothy Jean Celli were equal partners in the business of Adams Brothers during 1942 and 1943 and, further, that respondent erred in taxing to petitioner Edward H. Adams the entire 1942 and 1943 net income of that business, except for a portion thereof allocated by respondent as the wife's community share. This conclusion obviates the necessity of expressing any opinion on the alternative assignment of error. Decision in each proceeding will be entered under Rule 50.